ORIGINAL

## JUDGE ROBINSON

Steven M. Kaplan (SK 6909)
Scott A. Ziluck (SZ 4826)
KAPLAN & LEVENSON P.C.
Attorneys for Defendants
630 Third Avenue
New York, New York
(212) 983-6900

## 08 CV 2151

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

ANTHONY MAURO, a shareholder, of Merchants
Advantage Corporation, Suing In Right of Merchants
Advantage Corporation,

                                  **Plaintiff,**

                - against -

STERLING NATIONAL BANK, a/k/a STERLING
FINANCIAL SERVICES, a/k/a STERLING BANK
CORP., JOHN GALLO and ARUN PATEL,

                           **Defendants.**
------------------------------------------------------------------------X

**NOTICE OF**
**REMOVAL**

Case No.:

FILED
U.S. DISTRICT COURT
2008 MAR -4 AM 10: 47
S.D. OF N.Y.

        Petitioners JOHN GALLO AND ARUN PATEL ("Petitioners"), defendants in the above-captioned action, state:

        1.    Petitioners hereby exercise their right pursuant to 28 U.S.C. §1441 *et seq.* to remove this action from the Supreme Court of the State of New York, County of Westchester, the court in which plaintiff originally commenced this action and where it is pending under the same title and designated by Index Number 09567/07.

        2.    The District Courts of the United States have original jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331 and 1367(a), because the actions contains a claim brought pursuant to 18 U.S.C. § 1962(d).

{00090577.1 / 1013-017}

3.      This action may be removed to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1441(a) because said District is the place where the events giving rise to this action occurred.

4.      This action was commenced by the filing of a summons and complaint on or about May 14, 2007. Petitioners first received a copy of this initial pleading on February 26, 2008 by obtaining a copy from plaintiff's counsel.

5.      In accordance with the requirements of 28 U.S.C. §1446(b), this Notice of Removal is filed within 30 days after the service and/or receipt of a copy of the initial pleading upon Petitioners.

6.      Defendant Sterling National Bank is not a petitioner but consents to the removal of this action. A true and correct copy of the consent from Sterling National Bank is attached hereto as Exhibit A. Petitioners have not yet been served with process.

7.      Pursuant to the provisions of 28 U.S.C. §1446(a) Petitioners annexes to this Notice of Removal as Exhibit B a copy of the summons and complaint. No other process, pleadings, or orders have been served upon Petitioners in this action. Petitioners' time within which to respond to the summons and complaint has not expired since they have not been served yet. No other proceedings have been had in this action.

8.      Written notice of the filing of this Notice of Removal will be given to adverse parties as required by law.

9.      A true copy of this Notice of Removal with notice of its filing in this Court will be filed with the clerk of the Supreme Court of the State of New York, County of Westchester, as provided by law.

WHEREFORE, Petitioners request removal of this action to this Court and that this Court accept jurisdiction of this action and henceforth that this action be placed on the docket of this Court for further proceedings, the same as though this action had originally been instituted in this Court.

Dated: New York, NY
      March 4, 2008

                            KAPLAN & LEVENSON P.C.
                            Attorneys for Defendants
                            630 Third Avenue
                            New York, NY 10017
                            (212)983-6900

By: _____
                            Scott A. Ziluck (SZ-4826)

To:    Clerk of the Court
        United States District Court for the
          Southern District of New York

        Mario Biaggi, Esq.
        Biaggi & Biaggi, Esqs.
        220 Fifth Avenue -- Suite 1702
        New York, New York 10001

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER: COMMERCIAL PART
------------------------------------------------------------------------X

ANTHONY MAURO, a shareholder, of Merchants
Advantage Corporation, Suing In Right of Merchants
Advantage Corporation,

                                  Plaintiff,

            - against -

STERLING NATIONAL BANK, a/k/a STERLING
FINANCIAL SERVICES, a/k/a STERLING BANK
CORP., JOHN GALLO and ARUN PATEL,

                                Defendants.
------------------------------------------------------------------------X

**CONSENT TO**
**REMOVAL**

Index No.: 09567/07

        STERLING NATIONAL BANK, hereby consents to the removal of this action by

defendants John Gallo and Arun Patel pursuant to 28 U.S.C. §1441 *et seq.,* from the Supreme

Court of the State of New York, County of Westchester, the court in which plaintiff originally

commenced this action and where it is pending under the same title and designated by Index

Number 09567/07.

Dated: New York, New York
       March 3, 2008

                              STERLING NATIONAL BANK

                              By: _____

                              Title: EVP and Corporate Secretary

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
---------------------------------------------------------------X

ANTHONY MAURO, AS SHAREHOLDER, OF
Suing in the Right of MERCHANTS ADVANTAGE
CORP.,

Plaintiff(s),

-against-


STERLING NATIONAL BANK, a/k/a STERLING
FINANCIAL SERVICES, a/k/a STERLING BANK
CORP., JOHN GALLO AND ARUN PATEL

Defendant(s).

---------------- -------------------------------------------------X
To the above named Defendant

Index No.: 09567|07

Plaintiff designates

**WESTCHESTER**
County as the
Place of Trial

The basis of the venue
Plaintiff's Residence

Plaintiff's Address:
28 Reade Street
Yonkers, New York 10703

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service or (within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: May 16, 2007

Attorney(s) for Plaintiff
Mario Biaggi Jr., Esq.
Biaggi & Biaggi, Esqs.
220 Fifth Avenue, Suite 1702
New York, New York 10001
(212) 233-8000

RECEIVED

MAY 22 2007

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

Defendant's address:

Sterling National Bank,
a/k/a Sterling Financial Services
512 Seventh Avenue
New York, New York 10018

John Gallo
C/o Sterling National Bank
512 Seventh Avenue
New York, New York 10018

Arun Patel
61 Parkside Drive
Levittown, New York 11756

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------X

ANTHONY MAURO, AS SHAREHOLDER, OF
MERCHANTS ADVANTAGE CORPORATION,
Suing in the Right of MERCHANTS ADVANTAGE
CORP.,

                           Plaintiff(s),

       -against-


STERLING NATIONAL BANK, a/k/a STERLING
FINANCIAL SERVICES, a/k/a STERLING BANK
CORP., JOHN GALLO AND ARUN PATEL

                          Defendant(s).
-------------------------------------------------------------------X

Index No.: 604015/04

VERIFIED
COMPLAINT

RECEIVED

MAY 2 2 2007

TIMOTHY C. ID.
COUNTY CLE
COUNTY OF WESTC.

       The plaintiff, by his attorney Mario Biaggi Jr., complaining of the defendant,

in the right of Merchants Advantage Corporation ("MAC"), to procure a judgment

in its favor, and suing on behalf of all the shareholders thereof similarly situated,

respectfully shows and alleges:

     1.    The defendants, Sterling Financial Services, a/k/a Sterling National

Bank, a/k/a Sterling Bank Corp., ("Sterling"), at all times hereinafter mentioned

was and now is a domestic corporation, duly organized and existing under and by

virtue of the laws of the State of New York with offices at 510 Eighth Avenue, City

of New York, County of New York, State of New York.

p. 2

Mar 04 08 11:07a

2.    The defendant, Sterling, at all times hereinafter mentioned, since on or about the first day October 1999, to date was the financial institution responsible for providing and monitoring a loan made by Sterling to MAC.

3.    The plaintiff Anthony Mauro at all times hereinafter mentioned, and at the time of the transaction complained of, to wit: on or about October 1999 to date, was and now is the owner and holder of record of MAC common shares.

4.    On or about November 12, 1999, MAC and Sterling signed a document entitled Loan, Security and Service Agreement between Sterling as lender and MAC as borrower (the "Loan Agreement").

5.    Sterling loaned MAC funds with the understanding that MAC would in turn loan said funds to individual vendors (the "vendor loans") who would repay the loans by transferring to MAC a portion of future credit card receivables as they came due. In addition to making the loan to the vendor, MAC would provide the vendor with services designed to enhance the vendor's business.

6.    On or about November 12, 1999, Sterling began to fund MAC's account maintained at Sterling's offices. MAC then made loans to the vendors pursuant to vendor contracts between MAC and the individual vendors. MAC gave the vendor contract to Sterling who funded between 65% and 75% of the amount of the credit card receivables pledged to MAC in said vendor contracts. The vendor loans were then repaid by MAC's collecting over a six months period, the

receivables pledged in the individual vendor contracts. Sterling's loan to MAC, made on the basis of each individual vendor contract pledged, was deposited in the MAC account maintained at Sterling's office and then with Sterling's consent, knowledge and approval, the amount funded to MAC by Sterling was distributed to the individual vendor. This process was repeated for each individual vendor loan

7.    From on or about November 12, 1999 all advances to the MAC account made by Sterling required the written approval of Mario Biaggi Jr. ("Biaggi"). Sterling had further agreed to notify Biaggi if the collateral became delinquent beyond the thirty days set forth in Section 1.1(c)(ii)(d) of the Loan Agreement. It was in part on the basis of this requirement that Biaggi in 2001 secured additional investors to invest and participate in Sterling's loan to MAC.

8.    In 2001, five investors, some of which had been solicited by Biaggi with Sterling's assistance, invested their funds into MA Funding. After receipt of the money from the investors, MA Funding, on behalf of the investors, invested Six Hundred Thousand Dollars ($600,000.00) into the Sterling loan, thereby increasing the total line of credit available to MAC. The investment was made pursuant to a participation agreement entered into between the Sterling and MA Funding in which Sterling assumed a fiduciary duty in the handling of said investment.

9.    During the two years that Sterling was loaning money to MAC, Sterling provided MAC with a float of funds advanced. Sterling knew that before

3

the individual vendor contracts could be funded, Sterling had to first fund MAC a percentage of the receivables pledged to MAC by the vendor in the vendor contracts. The process of loaning the money to MAC rather than directly to the individual vendor continued for two years.

10.    A vendor loan was not considered to be in default until the 31st day after Sterling provided the funds to MAC for each vendor loan. This enabled MAC to use the funds for thirty days as they saw fit. Sterling, however, listed on its books the receivables pledged in each vendor contract as available collateral on the day Sterling received the contracts from MAC, even though Sterling knew MAC had not yet advanced the funds to the individual vendor.

11.    From on or about November 12, 1999 until on or about April 2001, the loan to available collateral ratio was in formula in accordance with the Loan Agreement, i.e. the eligible collateral available was at least 25% more than Sterling's outstanding loan to MAC. The total MAC loan was calculated by adding all the individual loans made to MAC on the basis of the individual vendor contracts MAC assigned to Sterling minus money collected by MAC and placed in its account at Sterling. On or after April 2001, Sterling continued to fund the receivables contracts presented to it by MAC without the written approval of defendant Biaggi.

12.   On or about January 1, 2001, there was approximately $750,000 more collateral than there was loan outstanding on the MAC line of credit.

13.   On several occasions starting in 1999 and continuing throughout 2001, Biaggi questioned Sterling regarding the eligible collateral, and whether the loan was at least 25% less than the eligible collateral, as required by the Loan Agreement.

14.   Sterling, through its representatives, including, but not limited to, Arun Patel ("Patel") and John Gallo ('Gallo"), the Plaintiff's senior officials responsible for handling the MAC loan repeatedly informed Biaggi that the loan did not exceed 75% of eligible collateral and that there was a cushion of eligible collateral at least 25% greater than the loan amount.

15.   This cushion was particularly important to, among others, plaintiff Anthony Mauro, who had loaned MAC approximately $250,000 and who viewed this cushion of excess collateral as protecting his investment in the event MAC decided to and/or was forced liquidate its collateral and pay off the MAC loan.

16.   On the basis of various Sterling representations, Biaggi in 2001 secured additional investors to participate in the Sterling loan to MAC. At the same time, however, Sterling was representing that the collateral for MAC's loan was adequate and that Sterling did not know of any problems with MAC, it knew that said

5

collateral was in fact inadequate and that there were problems with MAC which

forced Sterling to manage MAC's daily operations.

17.    Sterling willfully misrepresented the adequacy of the collateral and the

conditions of MAC to Biaggi in his individual capacity and as agent for plaintiff

Anthony Mauro. It also made such willful misrepresentations to the MA Funding

investors and a third investment group called the Advantage Capital Group

("ACG").

18.    Sterling's misrepresentations to Biaggi, individually, and as agent for

Mauro, to M.A. Funding and to the ACG investors regarding the availability of

collateral,continued throughout 2001 and culminated in a meeting held at Sterling's

office at the end of September/beginning of October, 2001 (the "ACG meeting").

Present at the ACG meeting were Biaggi, Patel, Gallo and a representative(s) from

ACG.

19.    ACG was an investment group, separate and distinct from the MA

Funding investment group. It invested One Million Nine Hundred Thousand Dollars

($1,900,000.00) to participate in the Sterling loan to MAC pursuant to a

participation agreement between ACG and Sterling. Pursuant to said participation

agreement  Sterling assumed a duty to act as ACG's fiduciary, similar to the duty it

assumed in its agreement with MA Funding.

20.    The ACG meeting was the final due diligence meeting between Sterling and ACG prior to ACG investing in the Sterling loan. At that meeting, representative(s) from ACG questioned Gallo and Patel about the accuracy of the reports outlining the loan to collateral ratio and the general conditions of the company. Sterling responded that the loan to MAC was performing well and that the eligible receivables exceeded the loan by at least the 25% required by the Loan Agreement. Sterling further represented that it knew of no problems with MAC.

21.    Based on these representations, which were consistent with the representations made by Sterling to Biaggi, Mauro, MA Funding and ACG throughout and up to the October 2001 meeting, ACG invested in early October, 2001, One Million Nine Hundred Thousand Dollars ($1,900,000.00) into the MAC account maintained by Sterling at Sterling's offices.

22.    When Gallo and Patel made these representations, Gallo and Patel knew these representations were false and misleading. They represented that the collateral was eligible when in fact it clearly did not meet the definition of eligible collateral as that term was defined in Section 1.1 (c)(ii)(d) of the Loan Agreement. It also represented that it knew of no problems with MAC when in fact it clearly was aware of such problems and had begun to control MAC's finances.

23.   Shortly after the October 2001 ACG meeting, ACG notified Sterling in writing that it uncovered Sterling's fraudulent misrepresentations and demanded the return of its investment.

24.   Sterling acknowledged its wrongdoing, not only by returning to ACG the money it invested but by admitting in a related lawsuit that it negotiated a settlement with one of the MA Funding investors, Mr. Farkquhar, because of its concerns that Sterling was potentially liable for their actions in connection with the handling of the MAC loan.

25.   After Sterling's misrepresentation were exposed by ACG on or about October, 2004, Sterling precipitously changed the terms of the loan with MAC, eliminating the float and requiring MAC to invest six hundred thousand dollars in equity. Such a drastic change in terms placed MAC into an economic tailspin from which it could recover.

26.   Moreover, the precipitous cut in MAC's line of credit to less than half of what it was prior to the return of ACG's money, prevented MAC from providing the services it had been providing to those vendors to whom it had loaned monies.

27.   Sterling knew that MAC would be unable to provide the additional services after Sterling cut the MAC loan in half and that all that MAC would be providing to the individual vendors was a loan without services. At this point, on or about the end of 2001, the transaction with the vendors became strictly a loan

transaction. At this point further, Sterling directly funded the vendors. Thus, from the end of 2001 the vendors were required to repay twenty-five percent interest in six months or fifty percent per annum, in violation of the New York State Usury Laws.

28.    The wiring and mailing of funds to the individual vendors, in violation of the New York State Usury Laws, continued for up to three years until November 2004 when Sterling officially declared the MAC loan in default.

29.    In addition to its repeated violations of the Usury Laws of the State of New York, Sterling surreptitiously negotiated a release with one of the investors in MA Funding, Ken Farkquhar, releasing Sterling from liability for any potential claims brought by Farkquhar against Sterling in connection with its fraud and breach of fiduciary duty to MA Funding investors.

30.    Upon information and belief, Sterling, in exchange for the release, established a separate line of credit under a different company name in which Orlean, Cervone and Farkquhar became shareholders with the Plaintiffs knowledge, direction and/or acquiescence.

31.    Sterling then diverted the funds and contracts from the MAC line of as well as other MAC assets to the second company and by so doing further jeopardized MAC's economic viability.

32.    Despite the fact that the MA Funding and the ACG Participation Agreements are virtually identical, the plaintiff has concealed its fraud from the other MA Funding investors and has to date failed to return the money invested by the other MA Funding investors.

### AS AND FOR A FIRST CAUSE OF ACTION FOR FRAUD AGAINST DEFENDANTS STERLING, GALLO AND PATEL

33.    The defendants made representations to plaintiff and plaintiff's agent Biaggi and omitted the material facts as set forth in paragraphs one through thirty two of this complaint.

34.    Sterling's actions and the actions of John Gallo and Arun Patel have substantially contributed to the demise of MAC and thus caused injury to the plaintiff herein.

35.    That the relevant misrepresentations and/or omissions included, but were not limited to, that defendants were not aware of any problems with MAC in the summer and fall of 2001, that the collateral securing the MAC loan was at least 25% greater than said loan, that the MAC loan would provide operating capital in addition to being used as loan against vendor receivables pledged, that defendant had monitored the collateral carefully and that further Sterling was not involved in the daily operation of MAC.

36.    That plaintiff relied on the representations of the defendants herein and that said reliance was justifiable.

37.    That defendants' misrepresentations and omissions caused plaintiff substantial injuries and damages in the sum of twenty million dollars ($20,000,000.00).

### AS AND FOR A SECOND CAUSE OF ACTION FOR BREACH OF COVENANT OF GOOD FAITH AGAINST STERLING, GALLO AND PATEL

38.    Plaintiff repeats and reiterates each and every allegation previously set forth herein.

39.    That defendant owed MAC and its shareholders, including the plaintiff herein, Anthony Mauro, a duty of loyalty, good faith, fair dealing and full disclosure with respect to all matters involving the acquisition, management and handling of the MAC Loan.

40.    Defendants breach of said duties included, but was not limited to diverting assets from MAC to protect itself from its own liability in handling of the MAC loan, improperly diverting collateral and/or MAC assets, misrepresented MAC's state of affairs to interested parties and otherwise breaching its fiduciary duty to MAC and MAC shareholders.

41.    Said breach damaged plaintiff in the sum of twenty million dollars ($20,000,000.00).

*11*

## AS AND FOR A THIRD CAUSE OF ACTION FOR BREACH OF <u>FIDICUARY DUTY AGAINST STERLING GALLO AND PATEL</u>

42.    Plaintiff repeats and reiterates each and every allegation previously set forth herein.

43.    MAC and its shareholders invested confidence in said defendants to properly handle the management of the MAC loan and defendants assumed a duty to act as a fiduciary in connection thereto.

44.    Defendants acts as aforesaid breached its duty with MAC and plaintiff, causing damages to the plaintiff in the sum of twenty million dollars ($20,000,000.00)

## AS AND FOR A FOURTH CAUSE OF ACTION FOR BREACH <u>OF CONTRACT AGAINST STERLING, GALLO AND PATEL</u>

45.    Plaintiff repeats and reiterates each and every allegation previously set forth herein.

45.    Defendant acts as aforesaid were a breach of its contract with MAC and its shareholders.

46.    Plaintiff as a result thereof has been damaged in the sum of twenty million dollars ($20,000,000.00).

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST STERLING, GALLO, AND PATEL FOR A RICO VIOLATION OF 18 U.S.C. 1962(d)

47.    Plaintiff incorporates by reference each and every allegation set forth above as if alleged in full herein.

48.    Sterling, Gallo and Patel are persons within the meaning of 18 U.S.C. § 1961(3).

49.    As alleged herein Sterling, Gallo and Patel conspired with Farkquhar and the new company established by Orlean and Cervone (hereinafter collectively referred to as the "New MAC") to violate 18 U.S.C. § 1962(c) Without Sterling, Gallo and Patel's involvement in the conspiracy, the fraudulent scheme could not have been completed.

50.    As to the existence of conspiracy between Sterling, Gallo and Patel and the New MAC, Sterling, Gallo and Patel's actual knowledge of and knowing participation in or facilitation of the conspiracy began in or about October, 2001 and continued through November, 2004 when Sterling declared the MAC loan to be in default and stopped illegally funding vendors.

51.    The object of the conspiracy was for Sterling to recoup, by charging illegal and excessive rates of interest, the losses that Sterling had sustained from its negligent operation of the MAC loan. The overt acts by Sterling, Gallo and Patel committed in furtherance of the conspiracy were the multiple mailing and wiring of

*13*

funds to various vendors at loan rates in excess of the State of New York's usury laws and based on the fraudulent misrepresentations that the these vendors would be receiving services from MAC and/or the New MAC when in fact Sterling, Gallo and Patel knew that no such services could or would be provided.

52.    Sterling, Gallo and Patel knew of and agreed to the commission of numerous predicate acts which agreement reflects the *mens rea* for the existence of a conspiracy.

53.    Plaintiff has been injured in their property as a result of the overt acts by Sterling, Gallo and Patel committed in furtherance of the conspiracy, in that MAC ceased to exist as an economically viable entity and lost its assets through the operation of the New MAC and conversion of MAC assets to the New MAC.

54.    Accordingly, plaintiff seeks compensatory damages against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proved at trial, including interest thereon; the reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; the granting all applicable injunctive and equitable relief requested herein, including and order directing defendants to disgorge their ill-gotten gains and requiring payment of restitution of any monies wrongfully acquired and retained; and treble damages as authorized under RICO 18 U.S.C. § 1964 (c) and such and other relief as the Court deem just and proper.

Dated: May 14, 2007

Mario Biaggi Jr., Esq.
Biaggi & Biaggi, Esqs.
For the plaintiff
220 Fifth Avenue – Suite 1702
New York, New York 10001

*15*

## VERIFICATION

STATE OF NEW YORK,

COUNTY OF NEW YORK      SS:

That, Anthony Mauro, being duly sworn, depose and says that I am the

plaintiff in this action, that I have has read the attached answer to the complaint

herein and all the contents thereof are to the best of my knowledge true, except as to

the matters, therein stated to be alleged on information and belief, and that, as to

those matters, I believe them to be true.

Dated: May 14, 2007

Anthony Mauro

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-------------------------------------------------------------------X

ANTHONY MAURO, AS SHAREHOLDER, OF   Index No.:
MERCHANTS ADVANTAGE CORPORATION,
Suing in the Right of MERCHANTS ADVANTAGE
CORP.,

           Plaintiff(s),

   -against-

STERLING NATIONAL BANK, a/k/a STERLING
FINANCIAL SERVICES, a/k/a STERLING BANK
CORP., JOHN GALLO AND ARUN PATEL

           Defendant(s).

-------------------------------------------------------------------X

# VERIFIED COMPLAINT

**BIAGGI & BIAGGI**
**220 FIFTH AVENUE- SUITE 1702**
**NEW YORK, NEW YORK 10001**