# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER: COMMERCIAL PART
-------------------------------------------------------------------X
ANTHONY MAURO, A SHAREHOLDER, OF       Index No.: 09567/07
MERCHANTS ADVANTAGE CORPORATION,
SUING IN THE RIGHT OF MERCHANTS
ADVANTAGE CORPORATION,

                   Plaintiff(s),

       -against-                    **NOTICE OF MOTION**

STERLING NATIONAL BANK, a/k/a STERLING
FINANCIAL SERVICES, a/k/a STERLING BANK
CORP., JOHN GALLO AND ARUN PATEL,

                   Defendant(s).
-------------------------------------------------------------------X

**PLEASE TAKE NOTICE** that upon annexed affirmation of Mario Biaggi, Jr.,

duly sworn to on this 22nd day of February, 2008, and upon all pleadings and

proceedings heretofore had herein, the undersigned will make application to this court at

the Commercial Part at the courthouse located at 111 Dr. Martin Luther King Jr.

Boulevard, White Plains, New York on the 18th day of March 2008, at 9:30 a.m. or as

soon thereafter as counsel can be heard, for an order granting plaintiff's motion for

default judgment pursuant to  CPLR 3215(f) and for such other and further relief as the

court deems just and proper.

Dated: February 20, 2008

                                         _____
                                         Mario Biaggi, Jr., Esq.
                                         Biaggi & Biaggi, Esq.
                                         220 Fifth Avenue, Suite 1702
                                         New York, New York 10007
                                         (212) 233-8000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER: COMMERCIAL PART
-------------------------------------------------------------------X   Index No.: 09567/07
ANTHONY MAURO, A SHAREHOLDER, OF
MERCHANTS ADVANTAGE CORPORATION,
SUING IN THE RIGHT OF MERCHANTS
ADVANTAGE CORPORATION,

       Plaintiff(s),    Affirmation in Support
               of Plaintiff's Motion
               for Default

    -against-

STERLING NATIONAL BANK, a/k/a STERLING
FINANCIAL SERVICES, a/k/a STERLING BANK
CORP., JOHN GALLO AND ARUN PATEL,
         Defendant(s).
-------------------------------------------------------------------X

   I, Mario Biaggi Jr., an attorney duly licensed to practice law in the courts of the

State of New York, do hereby affirm under penalty of perjury as follows:

   1.  That I am the attorney for the plaintiff in this instant derivative action,

Mr. Anthony Mauro ("Mauro"), and I submit this affirmation in support of Mauro's

motion for default judgment against Sterling National Bank, a/k/a Sterling Financial

Services, a/k/a Sterling Bank Corp. ("Sterling").

   2.  The necessary proof for a default judgment, as required by CPLR

3215(f), is 1) proof of service of summons and complaint 2) proof of the claim; and 3)

proof of the default.

## I. PROOF OF THE SERVICE OF THE SUMMONS AND COMPLAINT

3.     On May 25, 2007, plaintiff served the summons and complaint in the instant action on Sterling's authorized representative, Mr. Joseph McGee. Attached is the affidavit of service. Exhibit A. The summons and complaint was served by Ms. Louise Grigg who had called Sterling prior to service of the summons and complaint to ask them who was authorized on its behalf to accept service. She was informed by Mr. McGee that he would be accepting service on Sterling's behalf. Exhibit B, Grigg Affidavit.

4.     In addition to the affidavit of service, plaintiff has enclosed herewith the summons and complaint signed by Mr. McGee, Exhibit C, as well as a copy of Mr. McGee's business card which was given to Mrs. Grigg after she handed Mr. McGee the summons and complaint. Exhibit D.

5.     Thus, service on the defendant Sterling has been completed.

## II.    PROOF OF PLAINTIFF'S CLAIM

6.     A complaint verified by the plaintiff may serve as an affidavit of his claim in satisfaction of the second requirement of CPLR 3215(f). Exhibit C.

7.     Plaintiff's shareholder derivative action is based on plaintiff's claim that the defendants Sterling, John Gallo ("Gallo") and Arun Patel ("Patel") mismanaged the handling of the Sterling loan to Merchant's Advantage Corporation ("MAC"), breached

their fiduciary duty to MAC and the MAC Shareholders with respect to the handling of said loan and effectively ruined MAC's business.

8.      As set forth in plaintiff's complaint, Sterling loaned money to MAC which in turn loaned those funds to individual vendors  (the "MAC loan"). Sterling's loan to MAC was based upon contracts between MAC and individual vendors which were assigned to the bank as collateral. At its apex, the MAC loan was four million five hundred thousand dollars. Two million of the MAC loan was funded by Sterling. The other two million five hundred thousand dollars was obtained through participation agreements with two groups of outside investors. Exhibit C.

9.      The first outside investor was M.A. Funding who contributed six hundred thousand dollars toward the MAC loan. The M.A. Funding investment came in increments, the last of which was contributed in the late summer of 2001. All of the M.A. Funding was invested pursuant to a participation agreement between Sterling and M.A. Funding, in which Sterling agreed to act as trustee and assumed a fiduciary duty for the money invested. Exhibit E. MA Funding consisted of five individuals including James Canino, Ken Farquhar and Phil Cucci. Exhibit F, Sterling v. Biaggi deposition of Gallo, pp. 92, 99-107.

10.     One million nine hundred thousand dollars was then invested by Advantage Capital Group ("ACG") in October of 2001, shortly after the last of the MA Funding six hundred thousand was invested. After ACG invested its funds, ACG wrote to Sterling

and informed it that it had mismanaged the MAC loan and that it had violated the participation agreements it had signed with MA Funding and ACG in which Sterling again assumed a fiduciary duty and agreed to act as trustee over the funds. <u>Exhibit G</u>. Moreover, Sterling's representative admitted under oath that Sterling had a "responsibility to monitor [the loan], to make sure it was being performed correctly". <u>Exhibit H, Canino v. Sterling deposition of Gallo</u>, pp. 102-03.

9.      Sterling, Gallo and Patel, in recognition of their mismanagement and upon receipt of the ACG letter notifying it that it had improperly managed the loan, immediately returned one million nine hundred thousand dollars to ACG. <u>Exhibit H</u>, pp. 76-79.

11.     In addition, Sterling secured a release from two of the M.A. Funding investors, Ken Farquhar and Phil Cucci. In exchange for the Farquhar release Sterling and Gallo provided Farquhar and the two principal officers of MAC, Keith Orlean, and Phil Cervone, a line of credit of between one hundred and five hundred thousand dollars to start a new business using the goodwill and other assets of MAC for the new venture. <u>Exhibit H</u>., pp. 114-15; <u>Exhibit F</u>, pp. 92, 99-107.

12.     While Sterling bargained for a release with Farquhar, it has failed to compensate another MAC investor, James Canino ("Canino"), a M.A. Funding investor like Farquhar and ACG. As a result, Canino initiated a litigation against Sterling, Gallo and Patel in New York Supreme Court under index number 603887/05. <u>Exhibit I</u>. The

discovery in the Canino action unequivocally establishes that Sterling is at fault and has breached their fiduciary duty as trustee over the funds in the MAC loan causing two million dollars to disappear.

13.     At a deposition in <u>Canino,</u>  for example Gallo, the senior bank representative handling the MAC loan, conceded that Sterling and Gallo had secured a release from Farquhar and provided him with a line of credit because it was concerned about Sterling's liability and claims Farquhar had against Sterling for its mishandling of the MAC Loan.

14.     Gallo testified as follows regarding the Farquhar release.

> Question:   I didn't asked why not, but why
>             did you get the release?
>
> Answer:     Why not, why not get a release?
>             The guy has eliminated participation- - -
>             he's eliminated not his participation, his
>             potential claim to the bank.
>
> Question:   Okay, that's what I'm getting at.
>
> Answer:     All right.
>
> Question:   Is part of the process of setting up
>             this separate line of credit for Keith
>             and Phil and perhaps other people, you
>             don't know, **you wanted to eliminate
>             Mr. Farquhar's potential claim against
>             the bank, correct**?
>
> Answer:     **Correct.** <u>Exhibit F</u>, pp. 106-07.

15.     In addition, Gallo conceded that it returned the money to ACG because the MAC loan was not properly secured and had not properly monitored the collateral. Indeed, after Sterling and Gallo returned the ACG investment, Sterling changed the entire manner in which the loans were provided because its initial loan procedure was admittedly flawed. Exhibit H, p. 92. This modification was a further indication by Sterling that the MAC loan had been improperly set up by Sterling and completely mismanages.

## III.   DEFAULT

16.     Plaintiff served the summons and complaint on May 5, 2007 through its process server and filed it in court on May 22, 2007. Almost a year has passed and Sterling has refused to respond to this meritorious complaint. It is clearly in default as per CPLR 3215(f). Accordingly, plaintiff respectfully moves for a default judgment against Sterling and respectfully asks that this matter be set down for inquest on the issues of damages.

17.     Over two millions dollars of collateral is missing on Sterling's watch despite their detailed agreements to act as trustee over said funds. It has acknowledged in the deposition testimony of it senior bank officials that it was concerned about potential claims against the bank. It has selectively settled with some of the investors who lost their money and immediately returned their money. Indeed, its breach of fiduciary duty and gross mishandling of the MAC loan has bankrupted MAC and

adversely affected plaintiffs interest as a MAC shareholder. For it to completely rearrange its lending procedures, after returning ACG's money and mishandling of the account, which caused a loss of two million dollars less, is far too little and too late. Sterling can not now claim on these facts that it is not without fault particularly in light of the contractual assumed fiduciary duty as trustee for the MAC loan.

18.     Accordingly, plaintiff respectfully requests for the above reasons, that its motion for default be granted and this matter be set down for a hearing on damages.

Dated: New York, New York
      February 20, 2008

Mario Biaggi Jr., Esq.
Biaggi & Biaggi, Esqs.
220 Fifth Avenue
New York, New York 10001

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

------------------------------------------------------------------X

ANTHONY MAURO, AS SHAREHOLDER, OF
Suing in the Right of MERCHANTS ADVANTAGE
CORP.,

                              Plaintiff(s),

            -against-

STERLING NATIONAL BANK, a/k/a STERLING
FINANCIAL SERVICES, a/k/a STERLING BANK
CORP., JOHN GALLO AND ARUN PATEL

                              Defendant(s).

--------------- ---------------------------------------------------X

To the above named Defendant

Index No.: 09561 07

Plaintiff designates

**WESTCHESTER**
County as the
Place of Trial

The basis of the venue
Plaintiff's Residence

Plaintiff's Address:
28 Reade Street
Yonkers, New York 10703

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service or (within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: May 16, 2007

Attorney(s) for Plaintiff
Mario Biaggi Jr., Esq.
Biaggi & Biaggi, Esqs.
220 Fifth Avenue, Suite 1702
New York, New York 10001
(212) 233-8000

RECEIVED
MAY 2 2 2007
TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

Defendant's address:

Sterling National Bank,
a/k/a Sterling Financial Services
512 Seventh Avenue
New York, New York 10018

John Gallo
C/o Sterling National Bank
512 Seventh Avenue
New York, New York 10018

Arun Patel
61 Parkside Drive
Levittown, New York 11756

2.     The defendant, Sterling, at all times hereinafter mentioned, since on or about the first day October 1999, to date was the financial institution responsible for providing and monitoring a loan made by Sterling to MAC.

3.     The plaintiff Anthony Mauro at all times hereinafter mentioned, and at the time of the transaction complained of, to wit: on or about October 1999 to date, was and now is the owner and holder of record of MAC common shares.

4.     On or about November 12, 1999, MAC and Sterling signed a document entitled Loan, Security and Service Agreement between Sterling as lender and MAC as borrower (the "Loan Agreement").

5.     Sterling loaned MAC funds with the understanding that MAC would in turn loan said funds to individual vendors (the "vendor loans") who would repay the loans by transferring to MAC a portion of future credit card receivables as they came due. In addition to making the loan to the vendor, MAC would provide the vendor with services designed to enhance the vendor's business.

6.     On or about November 12, 1999, Sterling began to fund MAC's account maintained at Sterling's offices. MAC then made loans to the vendors pursuant to vendor contracts between MAC and the individual vendors. MAC gave the vendor contract to Sterling who funded between 65% and 75% of the amount of the credit card receivables pledged to MAC in said vendor contracts. The vendor loans were then repaid by MAC's collecting over a six months period, the

2

receivables pledged in the individual vendor contracts. Sterling's loan to MAC, made on the basis of each individual vendor contract pledged, was deposited in the MAC account maintained at Sterling's office and then with Sterling's consent, knowledge and approval, the amount funded to MAC by Sterling was distributed to the individual vendor. This process was repeated for each individual vendor loan

7.     From on or about November 12, 1999 all advances to the MAC account made by Sterling required the written approval of Mario Biaggi Jr. ("Biaggi").  Sterling had further agreed to notify Biaggi if the collateral became delinquent beyond the thirty days set forth in Section 1.1(c)(ii)(d) of the Loan Agreement. It was in part on the basis of this requirement that Biaggi in 2001 secured additional investors to invest and participate in Sterling's loan to MAC.

8.     In 2001, five investors, some of which had been solicited by Biaggi with Sterling's assistance, invested their funds into MA Funding. After receipt of the money from the investors, MA Funding, on behalf of the investors, invested Six Hundred Thousand Dollars ($600,000.00) into the Sterling loan, thereby increasing the total line of credit available to MAC. The investment was made pursuant to a participation agreement entered into between the Sterling and MA Funding in which Sterling assumed a fiduciary duty in the handling of said investment.

9.     During the two years that Sterling was loaning money to MAC, Sterling provided MAC with a float of funds advanced. Sterling knew that before

the individual vendor contracts could be funded, Sterling had to first fund MAC a percentage of the receivables pledged to MAC by the vendor in the vendor contracts. The process of loaning the money to MAC rather than directly to the individual vendor continued for two years.

10.   A vendor loan was not considered to be in default until the 31st day after Sterling provided the funds to MAC for each vendor loan. This enabled MAC to use the funds for thirty days as they saw fit. Sterling, however, listed on its books the receivables pledged in each vendor contract as available collateral on the day Sterling received the contracts from MAC, even though Sterling knew MAC had not yet advanced the funds to the individual vendor.

11.   From on or about November 12, 1999 until on or about April 2001, the loan to available collateral ratio was in formula in accordance with the Loan Agreement, i.e. the eligible collateral available was at least 25% more than Sterling's outstanding loan to MAC. The total MAC loan was calculated by adding all the individual loans made to MAC on the basis of the individual vendor contracts MAC assigned to Sterling minus money collected by MAC and placed in its account at Sterling. On or after April 2001, Sterling continued to fund the receivables contracts presented to it by MAC without the written approval of defendant Biaggi.

12.     On or about January 1, 2001, there was approximately $750,000 more collateral than there was loan outstanding on the MAC line of credit.

13.     On several occasions starting in 1999 and continuing throughout 2001, Biaggi questioned Sterling regarding the eligible collateral, and whether the loan was at least 25% less than the eligible collateral, as required by the Loan Agreement.

14.     Sterling, through its representatives, including, but not limited to, Arun Patel ("Patel") and John Gallo ('Gallo"), the Plaintiff's senior officials responsible for handling the MAC loan repeatedly informed Biaggi that the loan did not exceed 75% of eligible collateral and that there was a cushion of eligible collateral at least 25% greater than the loan amount.

15.     This cushion was particularly important to, among others, plaintiff Anthony Mauro, who had loaned MAC approximately $250,000 and who viewed this cushion of excess collateral as protecting his investment in the event MAC decided to and/or was forced liquidate its collateral and pay off the MAC loan.

16.     On the basis of various Sterling representations, Biaggi in 2001 secured additional investors to participate in the Sterling loan to MAC. At the same time, however, Sterling was representing that the collateral for MAC's loan was adequate and that Sterling did not know of any problems with MAC, it knew that said

collateral was in fact inadequate and that there were problems with MAC which forced Sterling to manage MAC's daily operations.

17.     Sterling willfully misrepresented the adequacy of the collateral and the conditions of MAC to Biaggi in his individual capacity and as agent for plaintiff Anthony Mauro. It also made such willful misrepresentations to the MA Funding investors and a third investment group called the Advantage Capital Group ("ACG").

18.     Sterling's misrepresentations to Biaggi, individually, and as agent for Mauro, to M.A. Funding and to the ACG investors regarding the availability of collateral,continued throughout 2001 and culminated in a meeting held at Sterling's office at the end of September/beginning of October, 2001 (the "ACG meeting"). Present at the ACG meeting were Biaggi, Patel, Gallo and a representative(s) from ACG.

19.     ACG was an investment group, separate and distinct from the MA Funding investment group. It invested One Million Nine Hundred Thousand Dollars ($1,900,000.00) to participate in the Sterling loan to MAC pursuant to a participation agreement between ACG and Sterling. Pursuant to said participation agreement  Sterling assumed a duty to act as ACG's fiduciary, similar to the duty it assumed in its agreement with MA Funding.

20.    The ACG meeting was the final due diligence meeting between Sterling and ACG prior to ACG investing in the Sterling loan. At that meeting, representative(s) from ACG questioned Gallo and Patel about the accuracy of the reports outlining the loan to collateral ratio and the general conditions of the company. Sterling responded that the loan to MAC was performing well and that the eligible receivables exceeded the loan by at least the 25% required by the Loan Agreement. Sterling further represented that it knew of no problems with MAC.

21.    Based on these representations, which were consistent with the representations made by Sterling to Biaggi, Mauro, MA Funding and ACG throughout and up to the October 2001 meeting, ACG invested in early October, 2001, One Million Nine Hundred Thousand Dollars ($1,900,000.00) into the MAC account maintained by Sterling at Sterling's offices.

22.    When Gallo and Patel made these representations, Gallo and Patel knew these representations were false and misleading. They represented that the collateral was eligible when in fact it clearly did not meet the definition of eligible collateral as that term was defined in Section 1.1 (c)(ii)(d) of the Loan Agreement. It also represented that it knew of no problems with MAC when in fact it clearly was aware of such problems and had begun to control MAC's finances.

23.   Shortly after the October 2001 ACG meeting, ACG notified Sterling in writing that it uncovered Sterling's fraudulent misrepresentations and demanded the return of its investment.

24.   Sterling acknowledged its wrongdoing, not only by returning to ACG the money it invested but by admitting in a related lawsuit that it negotiated a settlement with one of the MA Funding investors, Mr. Farkquhar, because of its concerns that Sterling was potentially liable for their actions in connection with the handling of the MAC loan.

25.   After Sterling's misrepresentation were exposed by ACG on or about October, 2004, Sterling precipitously changed the terms of the loan with MAC, eliminating the float and requiring MAC to invest six hundred thousand dollars in equity. Such a drastic change in terms placed MAC into an economic tailspin from which it could recover.

26.   Moreover, the precipitous cut in MAC's line of credit to less than half of what it was prior to the return of ACG's money, prevented MAC from providing the services it had been providing to those vendors to whom it had loaned monies.

27.   Sterling knew that MAC would be unable to provide the additional services after Sterling cut the MAC loan in half and that all that MAC would be providing to the individual vendors was a loan without services. At this point, on or about the end of 2001, the transaction with the vendors became strictly a loan

transaction. At this point further, Sterling directly funded the vendors. Thus, from the end of 2001 the vendors were required to repay twenty-five percent interest in six months or fifty percent per annum, in violation of the New York State Usury Laws.

28.     The wiring and mailing of funds to the individual vendors, in violation of the New York State Usury Laws, continued for up to three years until November 2004 when Sterling officially declared the MAC loan in default.

29.     In addition to its repeated violations of the Usury Laws of the State of New York, Sterling surreptitiously negotiated a release with one of the investors in MA Funding, Ken Farkquhar, releasing Sterling from liability for any potential claims brought by Farkquhar against Sterling in connection with its fraud and breach of fiduciary duty to MA Funding investors.

30.     Upon information and belief, Sterling, in exchange for the release, established a separate line of credit under a different company name in which Orlean, Cervone and Farkquhar became shareholders with the Plaintiffs knowledge, direction and/or acquiescence.

31.     Sterling then diverted the funds and contracts from the MAC line of as well as other MAC assets to the second company and by so doing further jeopardized MAC's economic viability.

32.    Despite the fact that the MA Funding and the ACG Participation Agreements are virtually identical, the plaintiff has concealed its fraud from the other MA Funding investors and has to date failed to return the money invested by the other MA Funding investors.

### AS AND FOR A FIRST CAUSE OF ACTION FOR FRAUD
### AGAINST DEFENDANTS STERLING, GALLO AND PATEL

33.    The defendants made representations to plaintiff and plaintiff's agent Biaggi and omitted the material facts as set forth in paragraphs one through thirty two of this complaint.

34.    Sterling's actions and the actions of John Gallo and Arun Patel have substantially contributed to the demise of MAC and thus caused injury to the plaintiff herein.

35.    That the relevant misrepresentations and/or omissions included, but were not limited to, that defendants were not aware of any problems with MAC in the summer and fall of 2001, that the collateral securing the MAC loan was at least 25% greater than said loan, that the MAC loan would provide operating capital in addition to being used as loan against vendor receivables pledged, that defendant had monitored the collateral carefully and that further Sterling was not involved in the daily operation of MAC.

36.    That plaintiff relied on the representations of the defendants herein and that said reliance was justifiable.

37.   That defendants' misrepresentations and omissions caused plaintiff substantial injuries and damages in the sum of twenty million dollars ($20,000,000.00).

### AS AND FOR A SECOND CAUSE OF ACTION FOR BREACH OF COVENANT OF GOOD FAITH AGAINST STERLING, GALLO AND PATEL

38.   Plaintiff repeats and reiterates each and every allegation previously set forth herein.

39.   That defendant owed MAC and its shareholders, including the plaintiff herein, Anthony Mauro, a duty of loyalty, good faith, fair dealing and full disclosure with respect to all matters involving the acquisition, management and handling of the MAC Loan.

40.   Defendants breach of said duties included, but was not limited to diverting assets from MAC to protect itself from its own liability in handling of the MAC loan, improperly diverting collateral and/or MAC assets, misrepresented MAC's state of affairs to interested parties and otherwise breaching its fiduciary duty to MAC and MAC shareholders.

41.   Said breach damaged plaintiff in the sum of twenty million dollars ($20,000,000.00).

## AS AND FOR A THIRD CAUSE OF ACTION FOR BREACH OF FIDICUARY DUTY AGAINST STERLING GALLO AND PATEL

42.     Plaintiff repeats and reiterates each and every allegation previously set forth herein.

43.     MAC and its shareholders invested confidence in said defendants to properly handle the management of the MAC loan and defendants assumed a duty to act as a fiduciary in connection thereto.

44.     Defendants acts as aforesaid breached its duty with MAC and plaintiff, causing damages to the plaintiff in the sum of twenty million dollars ($20,000,000.00)

## AS AND FOR A FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST STERLING, GALLO AND PATEL

45.     Plaintiff repeats and reiterates each and every allegation previously set forth herein.

45.     Defendant acts as aforesaid were a breach of its contract with MAC and its shareholders.

46.     Plaintiff as a result thereof has been damaged in the sum of twenty million dollars ($20,000,000.00).

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST STERLING, GALLO, AND PATEL FOR A RICO VIOLATION OF 18 U.S.C. 1962(d)

47.     Plaintiff incorporates by reference each and every allegation set forth above as if alleged in full herein.

48.     Sterling, Gallo and Patel are persons within the meaning of 18 U.S.C. § 1961(3).

49.     As alleged herein Sterling, Gallo and Patel conspired with Farkquhar and the new company established by Orlean and Cervone (hereinafter collectively referred to as the "New MAC") to violate 18 U.S.C. § 1962(c) Without Sterling, Gallo and Patel's involvement in the conspiracy, the fraudulent scheme could not have been completed.

50.     As to the existence of conspiracy between Sterling, Gallo and Patel and the New MAC, Sterling, Gallo and Patel's actual knowledge of and knowing participation in or facilitation of the conspiracy began in or about October, 2001 and continued through November, 2004 when Sterling declared the MAC loan to be in default and stopped illegally funding vendors.

51.     The object of the conspiracy was for Sterling to recoup, by charging illegal and excessive rates of interest, the losses that Sterling had sustained from its negligent operation of the MAC loan. The overt acts by Sterling, Gallo and Patel committed in furtherance of the conspiracy were the multiple mailing and wiring of

funds to various vendors at loan rates in excess of the State of New York's usury laws and based on the fraudulent misrepresentations that the these vendors would be receiving services from MAC and/or the New MAC when in fact Sterling, Gallo and Patel knew that no such services could or would be provided.

52.     Sterling, Gallo and Patel knew of and agreed to the commission of numerous predicate acts which agreement reflects the *mens rea* for the existence of a conspiracy.

53.     Plaintiff has been injured in their property as a result of the overt acts by Sterling, Gallo and Patel committed in furtherance of the conspiracy, in that MAC ceased to exist as an economically viable entity and lost its assets through the operation of the New MAC and conversion of MAC assets to the New MAC.

54.     Accordingly, plaintiff seeks compensatory damages against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proved at trial, including interest thereon; the reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; the granting all applicable injunctive and equitable relief requested herein, including and order directing defendants to disgorge their ill-gotten gains and requiring payment of restitution of any monies wrongfully acquired and retained; and treble damages as authorized under RICO 18 U.S.C. § 1964 (c) and such and other relief as the Court deem just and proper.

Dated: May 14, 2007

Mario Biaggi Jr., Esq.
Biaggi & Biaggi, Esqs.
For the plaintiff
220 Fifth Avenue – Suite 1702
New York, New York 10001

## VERIFICATION

STATE OF NEW YORK,

COUNTY OF NEW YORK      SS:

    That, Anthony Mauro, being duly sworn, depose and says that I am the plaintiff in this action, that I have has read the attached answer to the complaint herein and all the contents thereof are to the best of my knowledge true, except as to the matters, therein stated to be alleged on information and belief, and that, as to those matters, I believe them to be true.

Dated: May 14, 2007

                                       Anthony Mauro

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------X
ANTHONY MAURO, AS SHAREHOLDER, OF          Index No.:
MERCHANTS ADVANTAGE CORPORATION,
Suing in the Right of MERCHANTS ADVANTAGE
CORP.,

                                    Plaintiff(s),

        -against-

STERLING NATIONAL BANK, a/k/a STERLING
FINANCIAL SERVICES, a/k/a STERLING BANK
CORP., JOHN GALLO AND ARUN PATEL

                                    Defendant(s).
-------------------------------------------------------------------X

## VERIFIED COMPLAINT

**BIAGGI & BIAGGI**
**220 FIFTH AVENUE- SUITE 1702**
**NEW YORK, NEW YORK 10001**

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER: COMMERCIAL PART

--------------------------------------------------------------------X

ANTHONY MAURO, A SHAREHOLDER, OF
MERCHANTS ADVANTAGE CORPORATION,
SUING IN THE RIGHT OF MERCHANTS
ADVANTAGE CORPORATION,

                            Plaintiff(s),

      -against-

STERLING NATIONAL BANK, a/k/a STERLING
FINANCIAL SERVICES, a/k/a STERLING BANK
CORP., JOHN GALLO AND ARUN PATEL,
AND ARUN PATEL,

                            Defendant(s).

--------------------------------------------------------------------X

Index No.: 09567/07

AFFIDAVIT

     I, Louise Grigg, do hereby depose and swear under penalty of perjury as follows:

    1.    That on Friday May 25, 2007, I delivered the above captioned summons and complaint to Mr. Joseph McGhee who informed me that he was Sterling's representative authorized to accept service on behalf of Sterling.

    2.    He gave me his business card, kept the summons and complaint and signed a copy of the summons and complaint which I kept for plaintiff's benefit.

                              _Louise Grigg_
                              Louise Grigg

Sworn to this 21st day of
February 2008.

_____
NOTARY PUBLIC

ANTHONY P. DELORENZO
Notary Public, State of New York
No. 24-4764004
Qualified in Kings County
Commission Expires 9/24/09

# EXHIBIT C



**Joseph McGee**
First Vice President &
Security Officer

# STERLING NATIONAL BANK
A Subsidiary of Sterling Bancorp

500 Seventh Avenue
New York, NY 10018-4502
Phone: 212.575.5230
Fax: 212.575.3485
joseph.mcgee@sterlingbancorp.com

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
--------------------------------------------------------------X
ANTHONY MAURO, AS SHAREHOLDER, OF
MERCHANTS ADVANTAGE CORPORATION,
Suing in the Right of MERCHANTS ADVANTAGE
CORP.,

                                 Plaintiff(s),

        -against-

STERLING NATIONAL BANK, a/k/a STERLING
FINANCIAL SERVICES, a/k/a STERLING BANK
CORP., JOHN GALLO AND ARUN PATEL

                                 Defendant(s).
--------------------------------------------------------------X

Index No.: 604015/04

AFFIDAVIT OF SERVICE

RECEIVED

JUL 3 1 2007

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

STATE OF NEW YORK)
               : SS.:
COUNTY OF NEW YORK)

        LOUISE GRIGG, being duly sworn, deposes and says:

1.     That I am not a party to this action, I am over 18 years of age and reside in the State of
New York.

2.     On Friday May 25, 2007 at 2:30 P.M., I served a Verified Complaint in the above action
upon Joseph McGee, First Vice President & Security Officer, Sterling National Bank,
500 Seventh Avenue, New York, New York 10018

3.     Mr. Joseph McGee is described as a Male, White, Gray Hair, approximately 6'3 175lbs,
age 70.

                                           _____
                                         LOUISE GRIGG

Sworn to before me this
25th day of May 2007

_____
NOTARY PUBLIC

     ANTHONY P. DELORENZO
  Notary Public, State of New York
        No. 24-4764004
    Qualified in Kings County
Commission Expires 1/21/09

# EXHIBIT E

Case 7:08-cv-02151-SCR  Document 5  Filed 03/26/2008  Page 35 of 36

# PARTICIPATION AGREEMENT

PARTICIPATION AGREEMENT made this 25th day of April, 2001 by and between Sterling National Bank, 500 Seventh Avenue, New York, New York 10018 ("Sterling") and M.A. Funding, Inc., 18 NW 69th Avenue, Suite 201, Plantation, Florida 33313 ( the "Participant").

## WITNESSETH:

WHEREAS, Sterling has entered into an accounts receivable financing agreement (the "Loan Agreement") with Mechants Ad-Vantage Corporation, Inc. (the "Borrower");

NOW, THEREFORE, it is agreed as follows:

1. Sterling hereby grants, bargains, sells and assigns to Participant as of this date for $150,000.00 a participating interest in the Loan Agreement. The participating interest shall bear interest at the rate of eighteen percent (18.00%) per annum. Interest shall be payable on the last day of each calendar month commencing on April 30, 2001

2. Sterling shall have and is hereby given, the sole authority for and on behalf of the parties hereto, to administer the Loan Agreement in Sterling's name alone and the same shall be binding upon the parties hereto, provided however, that with respect to effecting collections, Sterling shall be deemed to be acting both for Sterling and with respect to Participant's interest in such transactions, for Participant as Participant's agent.

3. Sterling shall occupy the status of trustee for the participant's benefit with regard to Participant's participation in the monies due under the Loan Agreement, and Sterling shall hold Participant's participating interest and the collateral securing the same as Participant's trustee. The above notwithstanding, however, Sterling is expressly given the consent of Participant in the conduct of these arrangements to intermingle Participant's contribution in this transaction, receipts from the Borrower and the Borrower's assigned accounts, and other funds arising out of said transactions with other funds of Sterling.

4. Sterling shall, upon reasonable request, supply Participant with copies of any papers and documents involved with periodical accountings showing the collection status of the Borrower's account. Participant shall have the right to have access to Sterling's books and records pertaining to the said transactions at all times during ordinary business hours in the presence of an officer of Sterling.

5. Sterling shall use its best efforts to conduct all transactions in accordance with sound practice and within the terms of the underlying agreements. Both parties hereto expressly understand and agree that no representations or warranties have been made with respect to the validity or adequacy of any collateral and that each party hereto has no recourse whatsoever to the other party excepting only for breach of this agreement, breach of trust or malfeasance.

6. All compensation for the above transactions as and when actually received shall be divided between the parties hereto in proportion to their respective participating interests, except

Case 7:08-cv-02151-SCR   Document 5   Filed 03/26/2008   Page 36 of 36

divided between the parties hereto in proportion to their respective participating interests, except as follows: On the principal amount of Participant's participating interest, compensation is to be paid at a rate per annum of 18.00%. Any and all losses shall be borne by and divided between us in proportion to our respective participating interests.

7. The parties hereto agree to share in proportion to their respective participating interests, all unrecovered out-of-pocket attorney's fees, court costs, collection and liquidation expenses which are reasonably incurred for the protection of the parties hereto.

8. Nothing herein contained shall confer upon either of the parties any interest in, or subject them to any liability for the business, assets, profits, losses or obligations of the other, except only as to the transactions set forth herein.

9. Either party hereto may terminate this agreement as to future transactions upon sixty (60) days written notice to the other. This agreement cannot be changed orally.

10. This agreement shall bind and benefit Participant and Sterling and their respective successors and assigns.

11. Notwithstanding anything to the contrary in this agreement, it is specifically understood and agreed that the Participant's interest in the Loan shall be subordinate to that of Sterling. Subordinate shall mean that in the event of a termination of the Loan Agreement, or in the event of a default by the Borrower under the provisions of the Loan Agreement, or in the event of a default by the Borrower in any agreement with Sterling, Sterling shall realize from the liquidation of the Borrower's collateral, or otherwise, all of the principal outstanding on its respective loans to the Borrower, together with any interest due or accruing thereon, before any distribution of any of such proceeds or any other payments are made to the Participant on account of the Participant's participation in the Loan.

IN WITNESS WHEREOF, the parties hereto have set their hands and affixed their seals the day and the year first above written.

STERLING NATIONAL BANK

By: _____
John P. Murphy, Sr. Vice President

M.A. FUNDING, INC.

By: _____
Marc Glazer, President

2